Pesante Martínez, Juez Ponente
*1161 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, Auto Express Inc. (recurrente), y mediante recurso de revisión administrativa nos solicita que examinemos una Resolución de 11 de septiembre de 2007, notificada a las partes en igual fecha, la cual, fue emitida por el Departamento de Asuntos del Consumidor (DACO). Mediante el referido dictamen, se declaró con lugar la querella que presentaron los recurridos, Karen M. Hernández Rodríguez y Carlos O. Díaz González, contra el recurrente. En síntesis, se declaró nulo un contrato de compraventa de un vehículo de motor que otorgaron las partes. Se determinó que medió dolo por parte del recurrente, y que por tal razón, el consentimiento que prestaron los recurridos estuvo viciado. Finalmente, se ordenó la restitución de las prestaciones.
Inconforme con el dictamen, el recurrente presentó una moción de reconsideración ante el DACO. Aunque la moción fue acogida inicialmente, nunca fue resuelta por el referido foro. Trascurridos más de 90 días para que el DACO se expresara sobre la moción, el recurrente acudió ante nos. En su escrito de revisión administrativa, el recurrente señaló que el DACO erró: (1) al haber tenido una comunicación telefónica con un representante del fabricante del vehículo objeto de la controversia, en ausencia de las partes, y además, sin que éste pudiera contrainterrogarle; (2) al haber basado sus determinaciones de hechos en el informe del perito del DACO; (3) al haber determinado que medió dolo en la contratación, a pesar de que se le entregó a los recurridos una comunicación escrita que divulgaba las condiciones físicas del vehículo; (4) al ordenar la devolución del precio del vehículo, en su totalidad, sin considerar el uso que le dieron los recurrente desde diciembre de 2003 cuando compraron el vehículo hasta septiembre de 2007 cuando se resolvió el contrato de compraventa; y (5) al haberle impuesto responsabilidad por el hecho de que el vehículo no tenía todos los sellos (con número de identificación) en todas sus piezas, aun cuando, alegadamente, no hay disposición legal que así lo requiriera.
Luego de haber examinado los argumentos del recurrido, y la prueba documental que sometió junto con su escrito, resolvemos. Adelantamos que modificamos el dictamen recurrido.
I
Esbozamos una breve relación de los hechos e incidentes procesales más relevantes de este caso.
El 26 de diciembre de 2003, el recurrente vendió a los recurridos un vehículo de motor usado por el precio de $6,000. Las partes otorgaron un contrato de compraventa. Además, las partes suscribieron un documento por el que los recurridos reconocían que se le había informado que el vehículo usado que adquirían del recurrente “pudo haber recibido daños cosméticos o estructurales motivado por golpes o accidentes sufridos antes de llegar a sus manos ”.
En diciembre de 2004, los recurridos intentaron infructuosamente de dar en trade in el vehículo en cuestión. *1162 Se les informó que varias piezas del vehícral© no temara ses números de serie. Entonces, los recurridos le reclamaron al recurrente que corrigiera la situación o que les devolviera el dinero que pagaron por el vehículo. Posteriormente, presentaron su querella ante el DACO.
El DACO remitió copia de esa querella original al recurrente. Luego, le remitió copia de la querella enmendada. Los recurridos habían enmendado la querella para incluir una solicitud de una indemnización de $10,000 por alegados daños y perjuicios. Lo anterior sucedió en agosto de 2005.
En el mismo mes se celebró una vista administrativa. El representante del recurrente declaró que el vehículo en controversia fue adquirido en Estados Unidos y que cumplió con todos los trámites legales que permitieron su importación a Puerto Rico. Más tarde, en noviembre de 2005, se ordenó la inspección del vehículo. El recurrente anejó a su recurso dos informes de inspección que fueron rendidos por el perito del DACO.
Uno de los informes fue de 26 de enero de 2006. En éste, el perito tomó cuenta de que en la querella se alegó que el vehículo no tenía número de identificación en el guardafango (o guardalodo) derecho e izquierdo de la parte delantera del vehículo. Según la querella, el bonete tampoco tenía número de identificación. Por otro lado, el perito advirtió que el recurrente había expresado su disposición a realizar los trámites para que se le asignara números de serie a las piezas, y ello, mediante el proceso correspondiente ante la División de Vehículos Hurtados de la Policía de Puerto Rico.
Culminada la inspección, el perito del DACO opinó que el vehículo había sido pintado; que el sello con el número de identificación del guardalodo delantero izquierdo se había pintado del mismo color del auto y que la pintura impedía que se pudiera identificar el número de serie. Más aún, destacó entre sus observaciones que el vehículo presentaba deterioro en la pintura del bonete y otros golpes mínimos en la carrocería. Añadió que el vehículo no aparentaba haber tenido un mantenimiento adecuado.
El perito del DACO rindió un segundo informe tras una inspección realizada el 5 de febrero de 2007. En esa ocasión, volvió a tomar cuenta de la reclamación de los recurridos en relación a la alegada falta de números de serie en algunas de las piezas del vehículo. También, destacó que ante esa reclamación, el recurrente se defendió aduciendo que el fabricante había lanzado al mercado los vehículos como el de este caso, precisamente, sin números de serie en esas piezas.
Como parte de su opinión, el perito indicó que el vehículo aparentaba haber sido impactado y reparado. Agregó que se había comunicado telefónicamente con un representante del fabricante de la marca del vehículo en controversia. Aquél le aclaró que los vehículos como el de este caso salían de fábrica con los números de serie en las piezas aludidas por los recurridos.
Basándose en lo anterior, el DACO concluyó que el consentimiento que prestaron los recurridos, al momento de otorgar el contrato de compraventa, estuvo viciado. Adujo el referido foro que el recurrente incurrió en dolo tras dejarle de informar verbalmente y por escrito que el vehículo objeto de la compraventa había sido impactado y reparado con anterioridad a la venta. Seguido, el DACO dispuso que el contrato era nulo y que procedía la restitución recíproca de las cosas objeto del referido negocio de compraventa. Ordenó, entonces, que el recurrente reembolsara a los recurridos el precio que pagó por el vehículo en controversia, esto es, $6,000. Una vez recibieran la referida suma, los recurridos devolverían el vehículo al recurrente.
El DACO fundamentó su determinación en las disposiciones del Código Civil sobre contratos y la jurisprudencia interpretativa de la figura de dolo contractual. También trajo a colación la sección 28.2 del Reglamento Número 4794, Reglamento sobre Garantías de Vehículos de Motor. La referida sección dispone que todo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, deberá indicarlo verbalmente y notificarlo por escrito al consumidor en el contrato de *1163 compraventa.
De esta determinación, acudió ante nos el recurrente. Tomando en cuenta sus argumentos, y conforme al derecho aplicable, llegamos a las siguientes conclusiones.
II
A
Se ha reiterado la norma de rendir deferencia judicial a las determinaciones administrativas, especialmente cuando se trata de agencias con amplio expertise en el asunto en controversia. Misión Industrial de Puerto Rico, Inc. v. Junta de Planificación, 146 D.P.R. 64, 129-130 (1998). Igualmente, hay que destacar que los procedimientos y decisiones de un organismo administrativo tienen a su favor una presunción de corrección y regularidad, la cual debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987); M & B.A., Inc. v. Departamento de Agricultura, 118 D.P.R. 319 (1987). Por eso, los tribunales revisores debemos ser cautelosos al intervenir con las determinaciones de organismos administrativos. Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992). Debemos otorgarle deferencia a las determinaciones de hechos si las mismas están sostenidas por evidencia sustancial en el expediente administrativo. Misión Industrial de Puerto Rico, Inc. v. Junta de Planificación, supra; P.R.T.C. v. Unión Indep. Telefónicos, 131 D.P.R. 171 (1992).
Se ha expresado que para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial, es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada, incluyendo aquélla que sea contraria al punto de vista de la agencia y hasta el punto de que se demuestre claramente que la decisión de la agencia no está justificada por una evaluación justa del peso de la prueba. Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953).
En relación a lo anterior, conviene comentar los siguientes postulados que atañen al derecho administrativo: (1) evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión; (2) de existir un conflicto razonable y auténtico en la prueba, el tribunal debe considerar como concluyente la determinación de la agencia, aun si el tribunal hubiese preferido la otra inferencia si el asunto se hubiese dilucidado de novo ante el tribunal; (3) debe respetarse el dictamen de una agencia en cuanto a la credibilidad de los testigos; y (4) es concluyente una determinación administrativa que tenga una base racional. Hilton Hotels v. Junta Salario Mínimo, supra, pág. 687.
Abonando a esto último, este foro apelativo intermedio sólo alterará las determinaciones de una agencia administrativa cuando se demuestre eficientemente que existe arbitrariedad, ilegalidad o irrazonabilidad de parte de la agencia o cuando la determinación no se sostenga a la luz de prueba sustancial existente en la totalidad del expediente. Misión Industrial de Puerto Rico, Inc. v. Junta de Planificación, supra.
Basándonos en estos principios, concluimos que no se cometió ni el primer ni el segundo error señalado. En este caso, un técnico o perito del DACO efectuó una inspección del vehículo en controversia. Como resultado de la inspección, el perito del DACO rindió el correspondiente informe. Particularmente, del segundo informe rendido, surge que las partes comparecieron a la inspección. En ese segundo informe es que se emitió la opinión respecto a que el vehículo en controversia había sido impactado y reparado.
También, en ese informe se mencionó que el perito, como parte de su investigación, tuvo una comunicación con un representante del fabricante del vehículo. Notamos que la información sobre la que cuestionó al representante del fabricante estuvo relacionada a una alegación del recurrente. No surge del expediente *1164 evidencia acreditativa de que el recurrente hubiera objetado tal actuación en la vista administrativa, o en cualquier otro momento previo a que se emitiera el dictamen recurrido.
Entonces, el DACO, agencia con el expertise para lidiar con los reglamentos que atienden el tipo de reclamaciones que presentaron los recurridos mediante querella, se basó no sólo en el informe que rindió su perito, sino también en la evidencia documental y testifical que ofrecieron las partes, ello, para formular las determinaciones de hechos y conclusiones de derecho que aparecen en el dictamen recurrido. En síntesis, pudo concluir que el vehículo en controversia había sido impactado y reparado previo a la compraventa que realizaron las partes.
El recurrente falló en demostrar la existencia de otra prueba que estuviera en el récord administrativo, que razonablemente redujera o menoscabara el peso de la evidencia pericial, documental y testifical que sirvió de fundamento para el dictamen del DACO. No nos probó que hubiera indicios de irrazonabilidad o arbitrariedad en el análisis y proceder del foro recurrido. El recurrente no nos demostró que hubiera evidencia que nos impidiera, concienzudamente, concluir que la pmeba en que se basó el DACO para formular sus determinaciones no fuera una sustancial. Por tanto, le rendimos deferencia al dictamen del DACO, y además, reconocemos la presunción de corrección que le asiste a los procedimientos -de investigación y disposición del caso- que llevó a cabo el referido foro.
B
En su tercer señalamiento de error, el recurrente cuestionó la determinación del DACO a los efectos de que medió dolo contractual de su parte. No se cometió el error señalado.
La existencia de un contrato requiere la existencia de tres elementos indispensables: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, (3) causa de la obligación que se establezca. Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391. El consentimiento se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio. Art. 1214 del Código Civil, 31 L.P.R.A. sec. 3401. Ahora bien, el consentimiento para un negocio es nulo cuando el mismo se ha producido por error, violencia, intimidación o dolo. Art. 1217 del Código Civil, 31 L.P.R.A. sec. 3404. En esos casos, las partes vienen generalmente obligadas a restituir las prestaciones objeto del contrato, salvo cuando la nulidad se deba a causa torpe o ilícita, en cuyo caso debe apreciarse el grado de culpa envuelto de la parte que reclama la devolución. Art. 1255 del Código Civil, 31 L.P.R.A. sec. 3514.
Existe dolo cuando una parte es inducida a celebrar el contrato mediante maquinaciones insidiosas, por ejemplo, cuando se le oculta a la parte compradora la existencia de una circunstancia que pudiese constituir un defecto oculto en el objeto vendido y entregado. Art. 1221 del Código Civil, 31 L.P.R.A. sec. 3408; Márquez v. Torres Campos, 111 D.P.R. 854, 871 (1982); Colón v. Promo Motor Imports, Inc., 144 D.P. R. 659, 666-667 (1997); Acosta & Rodas, Inc. v. PRAICO, 112 D.P.R. 583, 617 (1982); Canales v. Pan American, 112 D.P.R. 329, 338-342 (1982); Miranda Soto v. Mena Eró, 109 D.P.R. 473, 478 (1980).
Se ha expresado que el dolo se entiende como todo un complejo de malas artes, para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a resumirse el estado de ánimo de aquél que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él. Es la voluntad consciente de producir un acto injusto. Colón v. Promo Motor Imports, Inc., supra, pág. 666.
El dolo puede manifestarse al momento de la contratación o, posteriormente, en la consumación del contrato, cuando se omite consciente y voluntariamente cumplir con la obligación. Colón v. Promo Motor Imports, Inc., supra, pág. 668; Márquez v. Torres Campos, supra, pág. 864. El dolo no se presume. No obstante, como cualquier otro elemento mental, no tiene que ser establecido directamente, sino que puede inferirse de las circunstancias presentes en el caso en particular. Colón v. Promo Motor Imports, Inc., *1165 supra, pág. 669; Canales v. Pan American, supra, pág. 340.
Para que produzca la nulidad del contrato, el dolo tiene que ser grave y no meramente incidental, y no debió mediar por ambas partes. El dolo incidental sólo da lugar a la indemnización de los daños y perjuicios ocasionados. 31 L.P.R.A. sec. 3409; Colón v. Promo Motor Imports, Inc., supra, págs. 667-668. El dolo que causa la nulidad de la obligación es aquél que determina el consentimiento, es el que inspira y persuade a contratar, sin el cual no hubiera habido contratación. Id.
Por otro lado, además de las disposiciones del Código Civil de Puerto Rico que mencionamos, atañe a los hechos de este caso lo dispuesto en el Reglamento 4797, Reglamento de Garantías de Vehículos de Motor, según enmendado, promulgado por el DACO. Este aplica a toda persona que se dedique comercialmente en Puerto Rico a la venta de vehículos de motor, nuevos o usados. Tiene el propósito de proteger adecuadamente la inversión de los consumidores en la adquisición de vehículos de motor asegurándoles que el vehículo sirva los propósitos para los que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad. Además, tiene como finalidad prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. Art. 2 del Reglamento.
El Art. 28 del Reglamento en cuestión detalla la información que todo vendedor de vehículo de motor usado deberá ofrecer al consumidor. En particular, en la sección 28.2 se establece que:

“Todo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, deberá indicarlo verbalmente y notificarlo por escrito al consumidor en el contrato de compraventa. ”

En el caso ante nuestra consideración, a base de la prueba pericial, testifical y documental, el DACO infirió razonablemente que el recurrente no informó a los recurridos, verbalmente ni por escrito, que el vehículo en controversia había sido impactado y reparado, y ello, previo a que se consumara la compraventa. Estamos conformes con la determinación del DACO de que el alegado desconocimiento de que el vehículo hubiera sido previamente impactado y reparado no exime al recurrente de responsabilidad. De hecho, el propio Art. 29 del Reglamento 4797 exige la previa inspección de los vehículos usados ante de venderlos.
Por otro lado, el documento que firmaron los recurridos al momento de la venta, no cumplía con el requisito de la sección 28.2 del Reglamento antes aludido. El texto del referido documento no expresaba categóricamente que el recurrente informaba que, en efecto, el vehículo había sido impactado y reparado. Sólo indicaba que “pudo” haber sufrido daños por razón de un accidente.
El hecho de que se le hubiera privado a los recurridos, previo a la venta, el advenir en conocimiento de que el vehículo en controversia fue impactado y reparado, constituyó una violación clara al Reglamento sobre Garantías de Vehículos de Motor cuyo cumplimiento vela el DACO. También, ese hecho incidió en los principios de derecho contractual que discutimos antes. Entendemos que la condición del vehículo en controversia, de haber sido impactado y reparado previo a la compraventa, era un elemento esencial del que debió advertírsele a los recurridos a la hora de la contratación.
El recurrente, si bien no conocía, debió conocer de ese hecho antes de contratar con los recurridos. Estimamos que si hubiera descargado cabalmente su deber de inspeccionar los vehículos usados que vende, como le ordena el Reglamento antes referido, se hubiera percatado de ese hecho. El DACO pudo muy bien inferir de la prueba que el recurrente le ocultó a los recurridos una circunstancia que pudo constituir un defecto oculto en el objeto vendido y entregado. Su actuación, muy bien pudo tenerse por una dolosa. Por tanto, tal y como se hizo, procedía declarar nulo el contrato celebrado entre las partes, y además, conceder el remedio que aplica a este tipo de casos, esto es, la devolución de las prestaciones que se hicieron entre sí las partes contratantes.
*1166 C
Relacionado al punto antes discutido, estimamos que sí se cometió el cuarto error señalado. Procedía ordenarse la devolución de las prestaciones entre las partes involucradas en este pleito. Ahora bien, no debía ordenársele al recurrido el reembolso del precio de compraventa del vehículo de $6,000.
Surge del expediente que aun cuando los recurridos advinieron en conocimiento del defecto del vehículo que motivó la presentación de su querella, tal defecto no impidió que continuaran en el uso y disfrute del vehículo. De hecho, hay que destacar que entre el momento de la compra (en el 2003) y de la resolución final del pleito (en el 2007), los recurridos usaron el vehículo y no le dieron mantenimiento adecuado. Así lo expresó el perito del DACO en uno de sus informes. Por ello, entendemos que, en justicia, no puede ordenársele al recurrente que devuelva en su totalidad el precio de compraventa del vehículo a los recurridos.
El Art. 1255 del Código Civil, 31 L.P.R.A. sec. 3514, dispone que declarada la nulidad de una obligación, los contratantes deben restituirse recíprocamente las cosas que hubiesen sido materia del contrato, con sus frutos, y el precio con sus intereses. Tomando en cuenta lo anterior, concluimos que habiéndose decretado la nulidad del contrato que otorgaron las partes, procede el remedio concedido por la agencia, esto es, la devolución de las prestaciones por las partes. Sin embargo, a la suma que deberá reembolsar el recurrido, habrá que descontarle una partida razonable por el uso del vehículo en controversia y el importe de cualquier daño que no hubiera sido resultado del deterioro normal y corriente de los vehículos de motor que transitan por las vías públicas del país.
El descuento de una partida por el uso del vehículo debe entenderse equiparable a los frutos que derivaron los recurridos del vehículo en controversia, el cual, ahora deben devolver al recurrente. De esta manera se hace justicia, evitando a su vez, un enriquecimiento injusto. Corresponderá al DACO computar la partida a descontarse y la que finalmente terminará pagando el recurrente a los recurridos.
D
El quinto señalamiento de error no tiene mérito. El recurrente planteó que se le impuso responsabilidad, erróneamente, por el hecho de que no surgía de todas las piezas del vehículo en controversia los números de identificación del fabricante. Argüyó que no hay disposición de ley que así lo requiriera.
Basta con examinar la Ley para la Protección de la Propiedad Vehicular, Ley Núm. 213 de 13 de agosto de 2004, para darse cuenta que en múltiples disposiciones se exige la descripción y registro del número de identificación de los vehículos de motor y sus piezas. 9 L.P.R.A. secciones 3206-3207. De hecho, en la referida legislación se proscribe como delito el remover, mutilar, cubrir, alterar, remover, desprender o modificar de alguna forma los números de serie o de identificación impresos por el manufacturero o fabricante o asignados por el Secretario de Transportación y Obras Públicas de un vehículo de motor o de alguna de sus piezas. 9 L.P. R.A. sec. 3219. Más aún, la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22 de 7 de enero de 2000, contiene disposiciones similares (por ejemplo, Artículo 2.43, 9 L.P.R.A. 5044(m)).
En este caso, el recurrente esgrimió una defensa que no tenía mérito. Adujo que el fabricante nó había asignado números de identificación a las piezas que aludieron los recurridos en su querella. Independientemente de que el punto hubiera sido aclarado o no por una conversación que tuvo el perito del DACO con un representante del fabricante, cabe apuntar lo siguiente. La defensa del recurrente no se sostenía, máxime cuando de la investigación surgió que al menos en uno de los guardalodos del vehículo, sí parecía estar el sello que exhibiría el número de identificación de esa pieza. No obstante, el mismo estaba tapado con pintura. Así pues, podía inferirse que, en efecto, el vehículo en controversia debía tener sus sellos con los números de identificación en las piezas en controversia.
Valga destacar que la situación de falta de números de serie en ciertas piezas del vehículo pudo involucrar a *1167 los recurridos, incluso, en un proceso penal en el caso de que hubieran intervenido las autoridades pertinentes y hubieran confiscado el vehículo. En ese caso, los recurridos pudieron haber sido incluso privados del uso y disfrute del vehículo, esto es, hubieran sido perturbados en la posesión pacífica del vehículo. Esto último hubiera tenido unas implicaciones ulteriores que hubieran propiciado una acción de saneamiento por evicción. 
III
En mérito de lo anterior, confirmamos el dictamen recurrido en cuanto a la declaración de nulidad del contrato de compraventa otorgado entre las partes. Aunque también confirmamos en cuanto a la devolución de las prestaciones entre las partes, modificamos la resolución recurrida a los fines de ordenar al Departamento de Asuntos del Consumidor que determine la partida razonable que corresponda al uso que dieron los recurridos al vehículo en controversia. Luego, descontará la referida partida al precio que pagaron los recurridos por el vehículo. El recurrente reembolsará a los recurridos la suma restante. Una vez cumpla con la devolución de esa prestación, los recurridos le devolverán el vehículo en controversia.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. María E. Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIO 2008 DTA 57
1. Así sucedió en Rodríguez Dilán v. Guacoso Auto Corp., res. el 5 de diciembre de 2005, 2005 JTS 187.